SHUKAT ARROW HAFER WEBER & HERBSMAN, L.L.P.
Attorneys for Plaintiff
111 West 57th Street, Suite 1120
New York, NY 10019
(212) 245-4580
Dorothy M. Weber, Esq. (DW 4734)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

HECTOR TORRES,

        Plaintiff,

08 CIV _____ ( )

v.

**COMPLAINT**

VECTORMAX CORPORATION,

        Defendant.

---------------------------------------------------------------X

Plaintiff, Hector Torres (hereinafter referred to as "Torres"), by his attorneys, Shukat, Arrow, Hafer, Weber & Herbsman, L.L.P., alleges, upon knowledge with respect to his own acts and upon information and belief with respect to the acts of all others, alleges as follows:

**NATURE OF THE ACTION**

1. This action arises against Defendant VectorMAX Corporation ("VectorMAX"), which has defaulted on a Promissory Note ("Note"), a true and correct copy of which is annexed hereto as Exhibit A, made in connection with a Stock Option Agreement (the "Agreement"), a true and correct copy of which is annexed hereto as Exhibit B.

2. By this action, Plaintiff seeks to recover monetary stemming from Defendant's wrongful refusal to pay on the Note, payment in full for which became due, by its express terms, on April 27, 2008. Damages are in excess of $250,000.

## PARTIES, JURISDICTION AND VENUE

3. Hector Torres is an individual who is a citizen and resident of the State of Florida.

4. Defendant VectorMAX is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business at One Evertrust Plaza, Jersey City, New Jersey 07302.

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. There is complete diversity between Plaintiff and Defendant, and the amount in controversy exceeds $75,000.

6. Venue lies in the Southern District Court of New York pursuant to 28 U.S.C. § 1391(a) since a substantial part of the events or omissions giving rise to the claim occurred here.

## FACTUAL BACKGROUND

7. On or about October 27, 2007 Defendant executed a 12% Convertible Promissory Note in connection with a Stock Option Agreement. See, respectively, Exhibits A and B, annexed hereto. The Agreement is governed by the laws of the State of New York and the accompanying Subscription Agreement provides for mandatory jurisdiction in the Courts located in the State of New York.

8. The options pursuant to that Agreement and the terms of the Note were never exercised and the Note was never converted to shares.

9. The Note, by its own express terms, became due in full on April 27, 2008. Notwithstanding that the Note provides for a waiver of demand, a written demand was made for such payment on June 26, 2008.

10. The Defendant has failed and refused to make payment on the Note.

## COUNT I

### BREACH OF CONTRACT

11. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

12. As of April 27, 2008, the Note, bearing 12% interest annually, was due and owing to Plaintiff and, notwithstanding his written demands, Defendant has refused to pay, in direct breach of its contractual obligation thereunder.

13. Plaintiff has performed each and every act required to be performed by Him in accordance with the terms and conditions of the relevant agreements.

14. As the direct and proximate result of Defendant's breach of contract, Plaintiff has sustained and will sustain actual damages in an amount to be determined at trial but not less than $250,000, which Plaintiff is entitled to recover from Defendant with appropriate interest thereon at the rate of twelve (12%) annually.

WHEREFORE, Plaintiff demands that this Court enter judgment against Defendants as follows:

      a. Upon the First Cause of Action, awarding damages in an amount to be proved at trial, but not less than $250,000, together with other damages cause by Island Records wrongful conduct, together with appropriate interest thereon;

      b. Plaintiff's costs and disbursements of this action; and

      c. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 21, 2008

SHUKAT ARROW HAFER WEBER
& HERBSMAN, L.L.P.

By: _____
Dorothy M. Weber (DW 4734)
Attorneys for Plaintiff
111 West 57th Street, Suite 1120
New York, New York 10019

# Exhibit A

## 12% CONVERTIBLE PROMISSORY NOTE

**$250,000**                                                                                          Dated: October 27, 2007

Principal Amount                                                                                            State of New York

FOR VALUE RECEIVED, the undersigned VectorMAX Corporation (the "Company") hereby promises to pay to the order of Hector Torres having an address at 150 Airport Road, Suite 1000, c/o Joe Apuzzo, Lakewood, NJ 08701 (the "Noteholder"), the sum of two hundred and fifty thousand dollars ($250,000). Said sum shall be paid in the manner following:

**DUE IN FULL ON April 27, 2008.** Unless earlier converted, at the stated maturity, this Note shall bear interest at the rate of 12% per annum on the unpaid balance. All payments shall be first applied to interest and the balance to principal. Interest and principal shall be due and payable at the stated maturity.

This Note is subject to the following additional provisions:

1. This Note may be transferred or exchanged only in compliance with the Securities Act of 1933, as amended.

2. So long as any principal indebtedness evidenced hereby remains outstanding, the holder hereof may convert only the unpaid principal on this Note in whole or in part into shares of the Company's common stock, no par value, in accordance with the terms and conditions hereinafter set forth. The number of shares of Common Stock issuable on any conversion (the "Conversion Shares") shall be computed by dividing the amount of principal of the Note to be converted by four and 00/100 Dollars ($4.00).

3. The outstanding principal balance on the Note may be converted to Common Stock. In the event the Company elects to accelerate payment of the Note, the holder of the Note shall have ten (10) business days to convert the then-principal balance prior to prepayment by the Company.

4. This Note may be converted, at the holder's election in whole or in part at any time or times upon not less than two (2) business days' written notice to the Company by email, facsimile, certified or registered mail at the principal office of the Company (or such office or agency as the Company may designate by written notice to the holder) accompanied by (a) the surrendered Note and (b) the annexed conversion form, duly executed. If this Note shall be converted in part only, the Company shall, upon surrender of this Note as aforesaid, execute and deliver a new Note in the form hereof evidencing the rights of the holder to receive the balance of the principal and interest which is payable hereunder.

5. The holder understands and agrees that the Conversion Shares issuable upon the conversion hereof and issuable as interest hereunder shall be subject to all of the provisions of the Articles of Incorporation of the Company and any amendments thereto (which are on file at the office of the Company), to all of which the holder, by acceptance hereof, assents.

6. Until conversion of this Note, the Noteholder shall not, by virtue hereof, be entitled to any rights of a shareholder in the Company. However, the Company shall reserve sufficient Common Stock (free of preemptive rights) for the purpose of issue or transfer upon conversion of this Note and issuance of the Conversion Shares.

7. As used in this Note and in the conversion form attached hereto, the term "Common Stock" shall mean (i) the Company's common stock, no par value per share, (ii) any other security of the Company which is issued in exchange for or in lieu of the Company's Common Stock, (iii) any security of any issuer other than the Company which is issued in exchange for the Common Stock, and (iv) any security distributed as a dividend on the securities referred to in (i) through (iii) above.

8. Upon the conversion of the Note, the Company shall cause the Conversion Shares to be registered in the name of the Noteholder and the Noteholder will become the sole record legal and beneficial owner of the Conversion Shares free and clear of any liens, options, charges and transfer restrictions of any kind, except for those created by applicable securities laws. The Conversion Shares, when delivered to the Noteholder will be duly authorized, validly issued, fully paid, non-assessable, free and clear of all liens, claims, encumbrances, security interests and restrictions, other than the restrictive legend set forth on each stock certificate with respect to applicable securities laws.

9. This Note has been duly executed and delivered by the Company and constitutes the valid and binding agreement of the Company, enforceable against the Company in accordance with its terms.

This Note shall become and be due payable upon written demand made by the holder hereof if one or more of the following events, herein called events of default, shall happen to be continuing:

i. Default in the payment of the principal and accrued interest on this Note, if such payment has not been made within fifteen (15) business days after receipt by the Company of revenue from which a payment is required to be made under the terms of this Note;
ii. Application for, or consent to, the appointment of a receiver, trustee, or liquidator of the Company or of its property;
iii. Sale of all or substantially all of the assets of the Corporation;
iv. General assignment by the Company for the benefit of creditors; or
v. Filing by the Company of a voluntary petition in bankruptcy or a petition or an answer seeking reorganization, or an arrangement with creditors.

All payments hereunder shall be made to such address as may from time to time be designated by any holder hereof.

The undersigned corporation agrees to remain fully bound hereunder until this Note shall be fully paid and waives demand, presentment and protest, and all notices thereto, and further agrees to remain bound, notwithstanding any extension, renewal, modification, waiver, or other indulgence by any holder. No modification or indulgence by any holder hereof shall be binding unless in writing; and any indulgence on any one occasion shall not be an indulgence for any other or future occasion. This Note shall take effect as a sealed instrument and shall be construed, governed, and enforced in accordance with the laws of the State first appearing at the head of this Note.

VECTORMAX CORPORATION

BY: _____
Thomas W. Pragias, Vice Chairman

NEITHER THIS OPTION NOR THE COMMON STOCK TO BE ISSUED UPON EXERCISE HEREOF HAS BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "ACT"), OR QUALIFIED UNDER ANY STATE SECURITIES LAW (THE "LAW"), AND THIS OPTION HAS BEEN, AND THE COMMON STOCK TO BE ISSUED UPON EXERCISE HEREOF WILL BE, ACQUIRED FOR INVESTMENT AND NOT WITH A VIEW TO, OR FOR RESALE IN CONNECTION WITH, ANY DISTRIBUTION THEREOF. NO SUCH SALE OR OTHER DISPOSITION MAY BE MADE WITHOUT AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT AND QUALIFICATION UNDER THE LAW RELATED THERETO OR AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO VECTORMAX CORPORATION AND ITS COUNSEL, THAT SAID REGISTRATION AND QUALIFICATIONS ARE NOT REQUIRED UNDER THE ACT AND LAW, RESPECTIVELY.

VECTORMAX CORPORATION

NON-QUALIFIED STOCK OPTION AGREEMENT

This stock option (the "Option" or the "Agreement") is made and entered into as of the Date of Grant set forth below by and between VectorMAX Corporation (the "Company") and Hector Torres (the "Grantee") pursuant to that certain offering of the Company dated October 2, 2007.

1. **NOTICE OF STOCK OPTION GRANT**

The Optionee is being granted an Option to purchase Common Stock of the Company. This Option shall be subject to the following terms and conditions:

| | |
|---|---|
| Date of Grant: | **October 27, 2007** |
| Exercise Price: | **$4.00 per share** |
| Number of Shares Granted: | **75,000** |
| Type of Option: | **Nonstatutory Stock Option** |
| Expiration Date: | Three (3) years from the date hereof, except as otherwise provided in this Agreement. |

# Exhibit B

AGREEMENT made as of this 27th day of October (the "Grant Date"), between the Company, an Illinois corporation having its principal place of business at One Evertrust Plaza, Jersey City, New Jersey 07302, and the Grantee.

WHEREAS, the Company desires to grant to the Grantee an Nonstatutory Stock Option to purchase the total number of shares set forth above (the "Shares") of its common stock, no par value per share (the "Common Stock"), at the Exercise Price Per Share set forth above (the "Exercise Price"). This option is not intended to qualify as an "incentive stock option" ("ISO") within the meaning of Section 422 of the Internal Revenue Code of 1986, as amended (the "Code"); and

NOW, THEREFORE, the parties hereto agree as follows:

1) <u>Grant of Option</u>. The Company hereby grants to the Grantee the right and option to purchase all or any part of an aggregate of seventy-five thousand (75,000) Shares of its Common Stock on the terms and conditions and subject to all the limitations set forth herein (the "Option"). This Option is not intended to qualify as an "incentive stock option" ("ISO") within the meaning of Section 422 of the Internal Revenue Code of 1986, as amended (the "Code").

2) <u>Purchase Price</u>. The purchase price of the Shares covered by the Option shall be four dollars ($4.00) per share.

   a) <u>Vesting of Shares</u>. This Option shall immediately vest on the date of grant.

3) <u>Method of Exercise</u>. This Option is exercisable by delivery of an exercise notice, in the form attached as Exhibit A (the "Exercise Notice"), which shall state the election to exercise the Option and the number of Shares in respect of which the Option is being exercised (the "Exercised Shares"). The Exercise Notice shall be signed by the Optionee and shall be delivered in person or by certified mail to the Company. As applicable, the Exercise Notice shall be accompanied by payment of the aggregate Exercise Price as to all Exercised Shares. This Option shall be deemed to be exercised upon receipt by the Company of such fully executed Exercise Notice and, as applicable, accompanied by such aggregate Exercise Price.

4) <u>Method of Payment</u>. Payment of the aggregate Exercise Price shall be by any of the following, or a combination thereof, at the election of the Optionee:

   (a)   Cash or Check or cashless exercise

5) <u>Term of Option</u>. The Option shall terminate three (3) years from the date of grant.

6) <u>Transferability of Option</u>. This Option may only be transferred in compliance with the Act. The Company may request in its sole discretion an opinion of counsel from the transferor prior to any transfer to the effect that the Option may be transferred by the transferor without violation of the registration provision of the Act. Transferor shall notify the Company of any proposed transfer. The terms of this Agreement shall be binding upon the executors, administrators, heirs, successors, and assigns of the Optionee.

7) <u>Exercise of Option and Issue of Shares</u>. The Option may be exercised in whole or in part (to the extent that it is exercisable in accordance with its terms) by giving written notice to the Company, together with the tender of the Option price. Such written notice shall be signed by the person exercising the Option, shall state the number of Shares with respect to which the Option is being exercised, shall

2
w:\vectormax\offerings\october 2, 2007 convertible note offering\merged stock option agreements.doc

contain any warranty required by Section 7, below, and shall otherwise comply with the terms and conditions of this Agreement. Except as specifically set forth herein, the holder acknowledges that any income or other taxes due from him or her with respect to this Option or the Shares issuable pursuant to this Option shall be the responsibility of the holder. The holder of this Option shall have rights as a shareholder only with respect to any Shares covered by the Option after due exercise of the Option and tender of the full exercise price for the Shares being purchased pursuant to such exercise.

8) <u>Purchase for Investment</u>. Unless the offering and sale of the Shares to be issued upon the particular exercise of the Option shall have been effectively registered under the Securities Act of 1933, as now in force or hereafter amended, or any successor legislation (the "Act"), the Company shall be under no obligation to issue the Shares covered by such exercise unless and until the following conditions have been fulfilled:

    (a) The person(s) who exercise the Option shall warrant to the Company, at the time of such exercise, that such person(s) are acquiring such Shares for his or her own account, for investment, and not with a view to, or for sale in connection with, the distribution of any such Shares, in which event the person(s) acquiring such Shares shall be bound by the provisions of the following legend which shall be endorsed upon the certificate(s) evidencing their option Shares issued pursuant to such exercise:

> "The shares represented by this certificate have not been registered under the Securities Act of 1933 (the "Act"). Such shares may not be sold, transferred, or otherwise disposed of unless they have first been registered under the Act or unless, in the opinion of counsel satisfactory to the Company's counsel, such registration is not required."

    (b) The Company shall have received an opinion of its counsel that the Shares may be issued upon such particular exercise in compliance with the Act without registration thereunder. Without limiting the generality of the foregoing, the Company may delay issuance of the Shares until completion of any action or obtaining any consent, which the Company deems necessary under any applicable law (including, without limitation, state securities or "blue sky" laws).

9) <u>Notices</u>. Any notices required or permitted by the terms of this Agreement or the Plan shall be given by registered or certified mail, return receipt requested, or by hand with a signed receipt, addressed as follows, or to such other address or addresses of which notice in the same manner has previously been given:

    To the Company:

        VectorMax Corporation
        One Evertrust Plaza
        Jersey City, New Jersey 07302
        Attention: President

    To the Grantee:

        Hector Torres
        150 Airport Road, Suite 1000
        c/o Joe Apuzzo
        Lakewood, NJ 08701

Any such notice shall be deemed to have been given when mailed in accordance with the foregoing provisions. Either party hereto may change the address of which notices shall be given by providing the other party hereto with written notice of such change.

10) <u>Governing Law</u>. This Agreement shall be construed and enforced in accordance with the law of the State of New York without regard to conflict of laws principles.

11) <u>Benefit of Agreement</u>. This Agreement shall be for the benefit of and shall be binding upon the heirs, executors, administrators, and successors of the parties hereto.

IN WITNESS WHEREOF, the Company has caused this Agreement to be executed by its undersigned duly authorized officer, and the Grantee has hereunto set his or her hand, all as of the day and year first above written.

VECTORMAX CORPORATION

By: *(signed)* Chairman

James Romano, Chairman of the Board

*(signed)*

Hector Torres

### Designation in the Event of Grantee's Death

Grantee hereby designates the following as the person(s) to exercise the rights of Grantee under this Agreement in the event of Grantee's death:

Primary Designee(s):          Name:      _____

                              Address:   _____

                                         _____

                                         _____

                              Telephone Number: _____


Or, in the event of the death or incapacity of my Primary Designee(s):

Secondary Designee(s):        Name:      _____

                              Address:   _____

                                         _____

                                         _____

                              Telephone Number: _____


If no one is designated above, or, in the event of death or incapacity of the Primary and Secondary Designee(s), then Grantee designates the duly court-appointed or legally authorized Executor or Administrator of Grantee's estate (including Preliminary or Temporary Executor or Administrator).